2003 ME 54

## Marie ROBICHAUD

v.

## Jessica PARISEAU et al.

Supreme Judicial Court of Maine.

Submitted On Briefs: Feb. 26, 2003.

Decided: April 17, 2003.

---

N. Laurence Willey Jr., Marie E. Hansen, Willey Law Offices, Bangor, for plaintiff.

Thomas R. McKeon, Richardson, Whitman, Large & Badger, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Marie Robichaud appeals from a judgment entered in the District Court (Bangor, *Gunther, J.*) dismissing Robichaud's petition for grandparent visitation

rights. Robichaud contends the District Court erred by (1) finding she did not have standing to petition, (2) not holding an evidentiary hearing on the merits, and (3) not addressing the constitutionality of 19–A M.R.S.A. § 1803(1)(B) or 1803(1)(C) (1998). Pariseau asserts that (1) Robichaud failed to show an "urgent reason" existed to support her petition; (2) without the "urgent reasons" prerequisite for standing shown, the court appropriately dismissed her petition without an evidentiary hearing; and (3) if the court applied section 1803(1)(C) in the manner requested by Robichaud, the "urgent reason" prerequisite would be ignored and the statute would be unconstitutional. We disagree with Robichaud and affirm the District Court's decision.

## I. BACKGROUND

[¶ 2] Pariseau and Francis Sprague have three children: a daughter, 4, a son, 2, and a daughter, 1. Pariseau and Sprague live separately from each other. Sprague is subject to a protection from abuse order limiting his contact with Pariseau and the children. After Sprague was arrested for a series of burglaries in March 2002, Pariseau prohibited Sprague from further contact with the children.

[¶ 3] In April 2002, Robichaud, Francis Sprague's mother, filed a petition in the District Court seeking grandparent visitation rights pursuant to the Grandparents Visitation Act, 19–A M.R.S.A. §§ 1801–1805 (1998 & Supp.2002), after Pariseau denied her access to the children.[1] Robichaud's affidavit accompanying her petition generally described her relationship with the grandchildren. Pariseau responded by filing a motion to dismiss Robichaud's petition.

[¶ 4] Although the motion to dismiss was pending and the Grandparents Visitation Act requires the court to make a preliminary determination of whether the required affidavits demonstrate a sufficient relationship to proceed with the action, the court made no preliminary determination in this case. Instead, four months after the action was filed, the clerk scheduled a hearing before a Case Management Officer. The Case Management Officer then required the parties to attend a mediation session and scheduled a further hearing before the Case Management Officer. After the mediation session, the Judge appropriately intervened to begin the preliminary consideration of Robichaud's petition.

[¶ 5] The District Court provisionally granted Pariseau's motion to dismiss after reviewing Robichaud's affidavit. The court found Robichaud's affidavit was non-specific, and determined that Robichaud failed to satisfy the "urgent reasons" standard set forth in *Rideout v. Riendeau*, 2000 ME 198, ¶ 24, 761 A.2d 291, 301. The court, however, gave Robichaud an opportunity to supplement her affidavit prior to finalizing its decision.

[¶ 6] In Robichaud's supplemental affidavit, she describes occasional visits with the grandchildren lasting from one day to one week over three and one-half years, intermixed with several periods of daily contact with the two older children. The court found Robichaud's contacts typified "those that one would anticipate from a connected, extended family." The court concluded that Robichaud failed to meet the "urgent reasons" standard articulated in *Rideout*, and dismissed her complaint with prejudice. This appeal followed.

## II. DISCUSSION

[¶ 7] In *Rideout*, 2000 ME 198, 761 A.2d 291, we explained that the Grandparents

---

1. Sprague did not object to Robichaud's petition for visitation rights.

Visitation Act implicates parents' fundamental rights, thereby triggering strict scrutiny and requiring the proponent of such visitation to demonstrate a unique relationship with the subject of the request for visitation. *Id.* ¶¶ 19–24. We found the facts presented in *Rideout* demonstrated a compelling state interest in allowing visitation because the grandparents had been primary caregivers and custodians to their grandchildren, assuming the role of parental figures to the oldest two of three grandchildren for their first several years of life. *Id.* ¶¶ 4, 25, 27. Limiting our analysis to subsection 1803(1)(B), *id.* ¶ 17, we concluded that when grandparents have such a relationship with their grandchildren, the grandparents have a "sufficient existing relationship" and there are "urgent reasons" for State interference with parents' basic right to care and control of their children. *Id.* ¶¶ 25–27.

■ [¶ 8] We interpreted the Act, however, as requiring certain safeguards.[2] *Id.* ¶ 29. The first safeguard-and the only relevant safeguard to our analysis of Robichaud's appeal-requires a grandparent to establish standing before litigation may commence for visitation rights, pursuant to subsections 1803(1) and 1803(2)(A)–(C).[3] *Id.* Standing is established, pursuant to subsection 1803(1)(B), when grandparents prove they have a sufficient relationship that supports an "urgent reason" to interfere with a fit parent's fundamental right. *Id.* ¶¶ 24–25, 30.

■ [¶ 9] In proceedings of this sort, the court should promptly address the standing question after the parent files his or her answer and/or motion to dismiss. *See* 19–A M.R.S.A. § 1803(2). Until this preliminary standing question is resolved to allow the grandparents' action to proceed, no case management conferences and

2. The safeguards include that: (1) "a grandparent must establish standing *before* litigation may commence on a petition," (2) "the court must consider any objection of the parents concerning an award of rights of visitation or access by the grandparents" (giving life to the presumption that parents act in the best interests of their children), and (3) "the court may not grant visitation if doing so would significantly interfere with any parent-child relationship or with the parent's rightful authority over the child." *Rideout*, 2000 ME 198, ¶ 29, 761 A.2d at 302.

3. Section 1803 provides, in pertinent part:
§ 1803. Petition
1. Standing to petition for visitation rights. A grandparent of a minor child may petition the court for reasonable rights of visitation or access if:
A. At least one of the child's parents or legal guardians has died;
B. There is a sufficient existing relationship between the grandparent and the child; or
C. When a sufficient existing relationship between the grandparent and the child does not exist, a sufficient effort to establish one has been made.

2. **Procedure.** The following procedures apply to petitions for rights of visitation or access under subsection 1, paragraph B or C.
A. The grandparent must file with the petition for rights of visitation or access an affidavit alleging a sufficient existing relationship with the child, or that sufficient efforts have been made to establish a relationship with the child. When the petition and accompanying affidavit are filed with the court, the grandparent shall serve a copy of both on at least one of the parents or legal guardians of the child.
B. The parent or legal guardian of the child may file an affidavit in response to the grandparent's petition and accompanying affidavit. When the affidavit in response is filed with the court, the parent or legal guardian shall deliver a copy to the grandparent.
C. The court shall determine on the basis of the petition and the affidavit whether it is more likely than not that there is a sufficient existing relationship or, if a sufficient relationship does not exist, that a sufficient effort to establish one has been made.

related hearings or court ordered mediation sessions should be scheduled. *See id.*

 [¶ 10] Robichaud first contends the District Court erred by finding she did not have standing to bring her petition under the Act. *Rideout's* "urgent reasons" standard presupposes extraordinary contact between a grandparent and grandchildren to satisfy the constitutional requirement of a compelling state interest to interfere with parents' right to care for and control their children. *See Rideout,* 2000 ME 198, ¶¶ 24–27, 761 A.2d at 301–02. Robichaud's contact with her grandchildren was not extraordinary. The contacts Robichaud described in her affidavits exemplify a pattern of intermittent contact with the grandchildren. Unlike the relationship found in *Rideout,* Robichaud has not presented facts to indicate an urgent reason to maintain Robichaud's contact with her grandchildren. *See id.* ¶¶ 25–26. On the facts presented by Robichaud in her affidavits, the District Court did not err by dismissing the petition because Robichaud failed to present facts that indicate she has standing to petition pursuant to the Act. *See id.* ¶ 30.

 [¶ 11] Robichaud's second contention is that the District Court erred by not holding an evidentiary hearing. Grandparents do not have a common law or constitutional right of access to their grandchildren. *Id.* ¶ 26 n. 16. Therefore, the only means grandparents have to petition for visitation rights is the Act, which requires standing to bring a petition. *See id.* ¶¶ 26 n. 16, 29–30. The court is charged with making the threshold determination of whether grandparents have standing, based upon the facts set forth in their petition and affidavits. *See* 19–A M.R.S.A. § 1803(1), 1803(2)(A)–(C); *Rideout,* 2000 ME 198, ¶¶ 29–30, 761 A.2d at 302–03. Robichaud failed to prove she is "among those grandparents who may pur-

sue visits under the Act[,]" thus the court properly dismissed the petition without an evidentiary hearing. *See id.* ¶ 30.

[¶ 12] Robichaud's final contention is that the District Court erred by not addressing the constitutionality of subsections 1803(1)(B) or 1803(1)(C) as applied or requested. Because we conclude that the Act does not apply to the facts presented by Robichaud's appeal, we do not reach the issue of whether the Act is constitutional as applied to her facts.

The entry is:

Judgment affirmed.